Good morning, Your Honors. May it please the Court, I'm Albert Jacobs, Jr. I'm with Tenenbaum, Halpern, Syracuse, and First Strit. We represent Automated Transactions, LLC, who I'd like to refer to as ATL for convenience. And the FLEs, as I mentioned a minute ago, I would like to refer to as 7-Eleven for convenience. We submit, Your Honors, that a summary judgment was to be granted on the issue of infringement in this case. It should have been granted to ATL and not to 7-Eleven because of the overwhelming nature of the evidence of infringement. And that was contained in Dr. Suri's declaration, which is part of the record and exhibits appendices B, C, and D, beginning at 705, which is the tail end of his declaration. If you go back to 692, appendix B in particular, and I hold it up for the Court to see, all those double-sided pages are an analysis of infringement as it should be done, comparing the ATMs of 7-Eleven with each and every claim of each and every patent that was alleged to be infringed. Now while the District Court did grant ATL's motion for summary judgment, dismissing 7-Eleven's obviousness claim, it did grant summary judgment for 7-Eleven on indefiniteness of the internet interface phrase. We submit that was error. It did not take into account this Court's recent decision in Inventio, nor could the District Court have considered that decision because it was issued after the District Court decided indefiniteness. But we believe that case in particular, as well as several other cases we've cited in the brief, clearly support the fact that the phrase in question is clear indefinite. Jacob, just on the infringement issue, leaving aside the validity issue, indefiniteness, what is your position if this Court agrees with the District Court in its claim construction of internet interface, internet access, do you lose on infringement? Do you still have a case on infringement? I think we still have a case of infringement on two bases, and I think maybe it's an appropriate time to ask the Court if it would take cognizance of its own internet interface. That says, as I'm sure the Court's aware, that this is a private encrypted network, access to which is password protected, which then gets you onto the internet. So this very Court has a private protected network that accesses the internet. So if the District Court's opinion that the internet is entirely public, if it's accessed by a private network, such as from the ATM to Faustilian, it goes over an AT&T frame relay, which is a red herring I'll address in a minute. But assuming that to be a private network, it accesses the main part of Faustilian, which is outwardly facing IP addresses, we think there's clear infringement. And if there isn't literal infringement, there's doctrinal equivalence infringement. We think the Court must correct the definition of the internet. The FNC definition is not only the correct one, but was completely misread by the District Court. If it had meant what the District Court said it meant, then public or private would have been placed next to the services section. So I think this is a complete misreading. And our definition of the internet is also consistent with Wikipedia. The internet is a network of networks. And the Wikipedia definition, which is set forth on page 28 of our brief, discusses the fact that the internet is a network of networks, government, private, educational, a wide range of networks. It is hardly public only. Now what the District Court also failed to do is to take into consideration any of Dr. Suri's analysis. Nor did it take into consideration a statement which we think is essential to the definition of any contested term in a case. Dr. Suri testified that one of ordinary skill in the art at the relevant time would have relied upon the FNC definition construed in the manner that we say it should be construed. And what do we have on the other side? We have nothing. There's no statement by the 7-Eleven expert saying that the definition of the internet which the defendants proposed and the District Court relied upon would have been considered by anybody at the relevant time, let alone one of ordinary skill in the art. Beyond that, there is absolutely nothing to support that definition. Is the FNC made up of government bodies, a highly respected group of people, totally wrong in their conception of the internet? Well, it's not part of the record. If this case were remanded back, I would like to introduce evidence showing that even the inventors of the internet recognized that definition subsequently. And many others did. So this was not some catch-all definition that ATL plucked out of some textbook that nobody ever recognized. It's a government body that defined this, which was recognized by those skilled in the art at the relevant time. The District Court brushed all that aside. Indeed, they brushed aside the Suri declarations. They brushed aside literally everything in here. The detailed claim-by-claim analysis of infringement. The listing of those internet-accessible IP addresses that Castilian accesses. The District Court ignored the fact and didn't even comment upon the fact that Dr. Suri pinged the outwardly facing IP addresses of Castilian. But going back to your FNC definition, the District Court didn't ignore it. She indeed commented on it, did she not? I mean, she said, plaintiff erroneously conflates the internet's ability to make accessible publicly or privately high-level services, and whether or not the internet itself consists of publicly or privately accessible networks. So what's your response to that? She misconstrued it. Absolutely misconstrued it. She put public or private in the wrong place. If it was intended to have public or private refer to the services, then it would have read that way. But it doesn't. You can't just move words around and say, well, what it really means is this. So the people who wrote that really intended to have public or private refer to the services. So I'm going to move those words back over here in the definition. Well, if you look at the definition in subpart 3, it says provides, uses, or makes accessible either publicly or privately high-level services. Is that what you're referring to? That's exactly what I'm referring to. And why is she wrong? I guess I'm having a hard time seeing why she's wrong in her analysis that this refers to services. I'm reading it on its face. It's at page 34 of the appendix G. You got it. Thank you very much, Your Honor. A lot of paperwork in this case. I understand. So on the definition, provides, uses, or makes accessible either publicly or privately high-level services layered, et cetera. Okay, that's the way it reads. If it really meant what the district court said it meant, it should have said provides, uses, or makes accessible high-level services. I'm sorry. It should have said provides, uses, or makes accessible high-level publicly or privately or private services. That's where the services should have gone. Public or private should have gone next to the services, not where it was. And then look at that definition, Your Honor, compared to the Wikipedia definition, which you find on page 28 of the brief. The Internet is a global system. I won't read the whole thing. It's a global system of interconnected computer networks that use the standard Internet protocol suite, TCPIP, to serve billions of users worldwide. It's a network of networks that consists of millions of private, public, academic, business, and government networks of local to global scope. The way we read the definition of FNC, the way our expert read the definition of FNC, is entirely consistent with what most people at the relevant time, and indeed today, consider the Internet. And there's nothing, let me emphasize, nothing in the claims before this Court that require direct access to the Internet. So giving the claims their normal construction, the access may be direct or indirect. So the access could go through a private network to the Internet, very much like this Court's wireless Internet. Okay, so I'm on a computer and I have a private connection to Judge Bryson's computer. And through a separate connection, Judge Bryson is connected to the Internet. Yes. While he can connect to the Internet, I cannot connect to the Internet through his computer. Is it your position that my computer is on the Internet? It would appear not, but I'd like to just clarify that for a moment. You really have a private system with Judge Bryson. And unless you have the ability to use his system to move beyond that to the Internet, no, you are on a private system. Just the same way as most law firms, for example, they have private Intranet systems, not Internet systems. So those are totally private, they're not on the Internet. But if any of you have Kindles and you go onto the Kindle website and you order a book, you're on a public website, right? You're on Amazon.com. I'm not sure I understand your distinction. I had very much in mind the same kind of example that Judge Prost just used. What turns the little network between, say, among the three of us, we're connected, what turns that into part of the Internet as you define Internet? Okay, if I may step back a minute and reaffirm what makes it private to start with? It's private because it's restricted to the three of you. No one else can access that except the three of you. That's not part of the Internet. Once one of you allows access, let's say by all of you, through one of your computers to the Internet, then you become part of the Internet. So if I have a computer in which one of the icons is the Shaw, Prost, Bryson intranet and another icon is for my email, then suddenly my little intranet has become part of the Internet? No. Why? Because you're accessing your email. All right, and each of them has the same icon for accessing their email. It's still private, but if they can access your email over the Internet, then it becomes part of the Internet. Okay. A private network is one which is confined to the recipients. Once it becomes able to access the Internet by whatever means, it becomes part of the Internet. Into your rebuttal time, would you like to say that? Yes, I'd just like to say that the frame relay is a red herring. The court below was never asked to construe the term frame relay. Frame relay is an AT&T frame relay. It uses TCIP as the Internet protocol. It's considered part of the Internet, and if it's not on the Internet, why is it using TCIP? I'll reserve the rest of time for my rebuttal, Your Honor. Thank you. Mr. Dunn. Good morning, Your Honors, and may it please the court. If I understood Mr. Jacobs' comments, I think he's given away the story. If you look at page 830 of the record, which is the district court's opinion, she describes the accused's structure, and she points out correctly that there is no direct or indirect connection between the ATM and the Internet. She describes that there is a private connection between the ATM, the Become ATM, and the Postillion Transaction Manager. There's a separate private network between the Postillion Transaction Manager and the ultimate partner, and you cannot go from the ATM, directly or indirectly, to the ultimate partner. In fact, the Postillion Transaction Manager reconfigures the message. It does not just transmit a message from the ATM to the ultimate partner. It reconfigures it. It reformats it. It's a different message. So if you're asking, if you go to the ATM and you ask for $20, and the message that's transmitted digitally is 11000, the Postillion Manager will transmit a different message. It may be 00110011 to the ultimate partner. They're totally different messages. The problem with Mr. Jacobs' position is he misstates the issue in the case. The issue in the case is not whether or not the Internet can include a private network. The question is whether or not that private network can access the Internet. In fact, the district court expressly points that out on page A34, where she says the question is whether the network infrastructure of the Internet is accessible by the public or whether it also contains inaccessible private networks. The key is inaccessible private networks, and the district court judge goes down in footnote 12 and says the court's definition of the Internet merely requires that its underlying network infrastructure is publicly accessible. This does not mean that said network cannot be privately owned. So when Mr. Jacobs refers to the definition that he relies on, the FNC definition, that doesn't help his case at all. It uses the words accessible. Judge Prost, in asking him questions, was exactly on point. It says publicly or privately, and there's no reasonable way, I submit, to construe that as modifying the global information system. It clearly modifies the high-level services and not the network itself. Now, the problem is that the evidence that Mr. Jacobs relied on when he pointed to Exhibit D or Exhibit C of the Surrey Declaration doesn't really help his case. And the reason it doesn't help his case is that the question is what did Dr. Surrey ping and what was the hacking that he talked about that came from Russia? He did not ping, if you look at his words, he did not ping the ATM. He pinged, quote, the Cartronics VPN server. Now, the Cartronics VPN server, which is a VPN, stands for virtual private network, is a troubleshooting mechanism. If somebody at an ATM, you, for example, Judge Bryson, if you were picking up an ATM and you suddenly had problems, it's not working, there's a phone next to the ATM, you can call an employee, a health employee, a health desk, and say, I'm having problems with this ATM. The employee who cannot access that ATM directly will contact the VPN server. It's a private network, but it goes to the VPN server, it does not go to the ATM. And that VPN server can access a database at the Postillion Transaction Manager. It never goes back to the ATM. So there is a total disconnect, directly, indirectly, any way you want to do it, between the ATM and the ultimate party. Now, he also talks about hacking, the hacking from Russia. If you read that hacking article, and all that SORI does is reading the hacking article. Oh, I should note one thing. If you look at A3067, you will see that SORI himself said he didn't ping the ATM. Question, in any event, were you able to ping a BCOM? Answer, a BCOM ATM? Question, yes. I did not hack into the system to ping a BCOM ATM, so I couldn't do that without the proper security credentials. So, their case is carefully worded, but avoids the ultimate bottom line. Can there be access between the ATM and the Internet? Now, the hacking article doesn't really help them. To tell you the truth, it's not only hearsay, but I don't really understand what it's saying. It's saying on page 3050, the Russians, evidently using an SOL injection vulnerability, gained unauthorized access to 7-11's servers, not the ATM, servers, through 7-11's public-facing Internet site, and then leveraged that access into servers supporting ATM terminals. Well, that doesn't say there was access to the ATM terminals, and you look in Maine for any reference, in Dr. Suri's declarations or otherwise, to any connection between anything they're doing and the ATM, the BCOM ATMs. I suggest, if the district court got it right, there's no genuine issue with material facts. You hear words like saying, oh, this is public or this is private or whatever, but there's no support for the proposition that there is connection, directly, indirectly or otherwise, between the BCOM ATM and the Internet, and I think you were about to ask me a question. I was. If you're finished with that point, I wonder if you would address the invalidity, holding with respect to claims 1, 2, 3, and 5, and in so doing, if you could also tell us whether, and this gets a little ahead of ourselves, but some of those same claims are at issue in the next case, and thinking about the relationship between the two cases, should we affirm the next case? Does this issue drop out of this case? Maybe you can address that question first, and then get into the technical aspects of the invalidity claim. I knew you would ask that question. I'm getting too predictive. The answer is that if you affirm the PTO position in the next case, then this whole case would go away. Well, those claims. Those claims, the 4, 5, 7 patents. The other claims. Yes, you're absolutely right. In the 4, 5, 7 patents, the claims under rejection in the next case cover all of the claims involved in the infringement issue in this case, and in the indefiniteness issue in this case. So if you affirm that rejection, you will have a final appellate decision, and we would promptly move that ATL be collaterally stopped from pursuing its case on any of the claims that are up on appeal today in the 4, 5, 7 patents. But doesn't the infringement issue, not the invalidity, the indefiniteness question, but the infringement issue, maybe I'm wrong, I thought there were other parts of the continuation claims that were at stake here. So that even if the invalidity, even if an affirmance of the PTO case led to mooting out the indefiniteness issue before us in this case, I didn't think that the infringement case would necessarily be governed. Your Honor, our position would be that if the claims are invalid, you can't infringe an invalid claim. That would be our position, and that is why... Yes, but I thought there were other... I agree with that. I thought there were other claims at issue with respect to the infringement  I don't believe so, Your Honor. I believe it's 1 to 3, and 5, and 9, 10, and 14, and all those claims are implicated in the... And there are no other claims that are implicated in the infringement case? Well, there are a number of claims... In the 4, 5, 7 patents. No, but there are other patents, the continuation patents. Yes, the second case, the one that comes after this, and the PTO decision, will not directly affect the other patents. We may be able to move that the claims are close enough so they should be impacted, but we'll have to do some work beyond just that. So that goes to the infringement claims. My understanding, however, so please correct me if I'm wrong, is with respect to the indefiniteness, that would be rooted out, because that's what's at stake in the indefiniteness issue that you raised before. I didn't hear you, that would be why? That would be taken care of, what the indefiniteness aspect of this case is. Yes, it would be taken care of... Under the permits of the PTO, however, may not be with respect to all of the infringements. Right, and to the extent that you can't infringe an invalid claim, we would move that there be collateral estoppel as to all the claims on appeal in the 4, 5, 7 patent in this case. That's what we would argue. Now as to the indefiniteness point, our position is fairly straightforward. One is, there are two basic questions here. One is, is this a section 112 paragraph 6 case? And the second question is, assuming that it's a section 112 paragraph 6 case, is it indefinite? And so let me deal with the first point. The claim, the key language is, means for providing a retail transaction through an internet interface to the ATM. The structure, so the function is, providing a retail transaction through an internet interface to the ATM. The question is, what is the structure corresponding to the means? But is that the function, or is the function merely providing a retail transaction to the consumer and the structure being the internet interface to the automatic teller machine? In other words, you could have means for stopping a car through the application of a foot brake connected to a hydraulic system, connected to calipers that press on a disc and thereby stop the wheel. You would have a lot of structure in that expression. You would presumably say, well, means for stopping, and here's the structure, right? Your Honor, at the very least, the answer is in figure 3B in the drawings of the 457 patent, which is at 380 of the patent. And the only description of the ATM-internet combination refers you to 3B. And what do you see when you have 3B? You see an internet interface, you see a modem, and you see a control means. And the control means is nothing more, nothing less than a black fox. And the internet interface is nothing more, nothing less than a black fox. We cite cases, and there are many cases, that talk about when you have a control means, there are several cases dealing with that very issue, control means, and saying you've got to have an algorithm that is obviously run by a computer, and in fact it says it's a computerized control at 389 in the patent at the column 5, first and second lines. But this sounds like you're really moving on to the second point rather than the first, right? The second point being? The second point being, even assuming that all of this is descriptive, even assuming that all you've got is a retail transaction to the consumer as the function, nonetheless there still isn't enough structure between the claim and the specification, because basically all you've got is that this will be done by some kind of connection with the internet. That's really your argument, right? The argument is, the structure that you look at is the structure in figure B, because that's what's described, and that structure includes several black boxes. So that the words internet interface to the ATM is not enough structure, even if we accept that it is structure. Exactly, Your Honor. And I submit that once you conclude that this is a section 112 paragraph 6 claim, I think the end result is that under this court's case law, there is no structure describing what is in the control means, there's no structure even describing what the internet interface is. They say it's a NIC, but we point out in our brief that a NIC is not, the word N in NIC is network, not internet. It's generic, you can use a NIC for any purpose, and moreover they cite a case law, this Inventio case I guess, for one of the propositions being you can look at a person of skill in the art to fill in the void. I submit that is not so, that that case is not a means plus function case, and the means plus function cases make it clear that you cannot fill the void with expert testimony. You can use expert testimony to describe what is disclosed, but you can't use it to fill a void in what is not disclosed. Basically, Your Honors, that is our position. Thank you, Mr. Turner. Mr. Jacobs, you have a little time left for rebuttal. Thank you, Your Honor. I think my learned colleague has pointed out the material issues of fact between the experts, Dr. Lucatoni on the 7-11 side and ours, and I think that alone mandates at the very least a reversal and a remand so the case can go to the jury. It's not up to the judge on summary judgment to decide, I believe this expert, and I'm ignoring this one, and therefore I'm granting summary judgment in that party's favor. Second of all, there is no requirement that you be able to ping an ATM, and if it's an indirect connection to the Internet, that would be sufficient. Most importantly, lest I forget, 7-11 has not made one single mention of the other four patents in this appeal, and therefore I believe they have waived their right to make any comment about those patents whatsoever. There are four other patents, along with 457. I think our arguments must be taken as uncontroverted. If we're not entitled to a judgment of infringement, we've pointed out the language in those patents. One of them has an Internet connection not addressed by the judge. Are you saying that an argument, by not dealing with it in argument they've waived it, or by not dealing with it in the brief they've waived it, or what? They have not argued it. They have not made one mention in their brief of the other four patents in this appeal. They have been focused on 457. You can't ignore the four patents and then get up on oral argument and say, well, I'd like to make these comments about the other patents. 457 has specific language. We've pointed out in our brief, and Dr. Suri has in Appendix B, gone through all those patents, all five. We've got nothing on the other side on this appeal that rebutts that. No argument. No comment. I think that's a waiver. I think you've got to move on to other things since my rebuttal time is short, to say the least. Actually, it's expired, but why don't you make one final comment. You've got hacking. On the one side, you have an expert opinion. On the other side, you have attorney argument. I don't think that's a balancing of opinion. Postillion has outwardly facing IP addresses. Why do they have them if they're not using them? Those were pinged. As far as Dr. Suri not being able to get back to the ATM, 7-Eleven wouldn't give him the password. It's a sword and shield thing. We won't give you the password, but now we're criticizing you because you couldn't ping back to our system. That would be like this court saying we won't give you the private password to go through our encrypted network to get to our wireless internet, but we're going to criticize you, counsel, for not accessing our internet system, even though we didn't give you the password. Thank you, Your Honor. Thank you. We thank both counsel and the case is submitted.